UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,  :
 :
v.  : **MEMORANDUM & ORDER**
 : 16-cr-302 (WFK)
PIERRE SANTOS,  :
 :
                     Defendant.  :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 7, 2016, Pierre Santos ("Defendant") pled guilty, without a plea agreement, to a single count-indictment for Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below Defendant is hereby sentenced to 70 months of incarceration, 3 years of supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On June 7, 2016, the United States filed an Indictment charging Defendant with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), a Class C Felony. ECF No. 7. On October 7, 2016, Defendant pled guilty before this Court, without a plea agreement, to the sole count of the indictment.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "Sentencing Guidelines") range, the court

1

"shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks omitted). Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

 A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on July 12, 1986, in Brooklyn, New York. *See* Presentence Investigation Report ("PSR") ¶ 30, ECF No. 13. Defendants' father passed away in 1989 from heart disease. *Id.* Defendant's mother is still alive. Defendant's mother struggled with alcoholism during Defendant's youth and to the present day. *Id.* ¶¶ 33, 44. She advised the United States Probation Department ("Probation") that she believes Defendant is a good person, and she is disappointed about his involvement in the instant offense. *Id.* ¶ 31. Defendant also has one maternal half-brother who lives in Brooklyn. *Id.* ¶ 32. The Defendant reported having a close relationship with his brother, who is aware of Defendant's conviction for the instant offense and remains supportive. *Id.*

Defendant reported completing the 10th grade at Thomas Jefferson High School in Brooklyn in approximately 2004, and attending I.S. 68 (Isaac Bildersee Intermediate School) from approximately 1997 to 2000. *Id.* ¶ 46. The high school closed in 2007, and a response for verification from its successor had not been received by Probation at the time of the Presentence Report. *Id.* As verified by I.S. 68 school officials, Defendant attended from July 1997 to October 1999, and from January 2000 to September 2000, and completed the 8th grade. *Id.* According to school officials, Defendant "was an 8th grade holdover. He went to 252 as an 8th grader." *Id.*

Since 2013, Defendant has been involved in a romantic relationship with Justine Jimenez. *Id.* ¶ 33. Ms. Jimenez resides in Brooklyn, is a student, and is financially supported by unemployment benefits. *Id.* Defendant and Ms. Jimenez have a daughter, Kali (age 2 at the time of the Presentence Report), who resides with Ms. Jimenez and is in good health. *Id.* Ms. Jimenez also has a 16-year-old daughter, Kiara, who resides with her father in Uniondale, New York. *Id.* Ms. Jimenez's son Darell was murdered in 2011. *Id.* Ms. Jimenez is aware of Defendant's conviction and remains supportive. *Id.* In a telephone interview with Probation, she advised that Defendant is a great father and family man, and she hopes that he will reside with her upon his release from custody. *Id.* However, Defendant does not have a stable residence history. *Id.* ¶ 34. He has resided with his mother, various family members, and Ms. Jimenez. *Id.*

Defendant admittedly has a history of substance abuse. *Id.* ¶¶ 42-43. He reported to Probation that he smoked marijuana for the first time when he was 13 years old and continued to smoked almost daily until he was 22 years old. *Id.* ¶ 42. He tried crack cocaine on two occasions. *Id.* ¶ 43. Defendant admitted to drinking alcohol for the first time at approximately

16 years old and up until the time of his arrest for the instant offense. *Id.* ¶ 44. During periods of unemployment, Defendant would imbibe on a daily basis. *Id.* When employed, he would drink every other day. *Id.* According to the New York City Department of Community Supervision, Defendant attended the following substance abuse treatment programs: Willard Drug Treatment Center, Brooklyn; Narco Freedom, Queens, New York; St. Vincent's Services, Brooklyn, Daytop Village, Brooklyn; Center for Community Alternatives, Brooklyn; CIS Counseling Center, Brooklyn; and Com Alert, Brooklyn. *Id.* ¶ 45.

During periods of unemployment, from approximately 2010 through 2015, Defendant received public assistance benefits. *Id.* ¶ 50. He occasionally earned money by cutting hair for friends or family. *Id.* Defendant assisted his cousin, Nicole Santos, with caring for her two minor children. *Id.* He also assisted his cousin, William Santos, who is disabled from a gunshot wound, when his cousin's home health attendant was not working. *Id.* Defendant did not receive any compensation from his cousins for his assistance. *Id.* Defendant was employed for approximately two weeks as a utility worker for 4C Foods in Brooklyn before quitting for "personal reasons." *Id.* ¶ 49. Defendant was employed at Key Foods in Brooklyn from April 14, 2016 to May 4, 2016, up until his arrest for the instant offense. *Id.* ¶¶ 47-48.

In 2001, Defendant was arrested for the first time at the age of fourteen and was adjudicated a juvenile delinquent after a conviction for Robbery in the Second Degree. *Id.* ¶ 17. Over the next decade and a half, Defendant continued to violate the law. *Id.* ¶¶ 17-28. Defendant's adult criminal convictions include possession of a controlled substance, *id.* ¶ 18, sale of a controlled substance, *id.* ¶ 20, possession of a weapon, *id.* ¶ 19, attempted robbery, *id.* ¶ 21, and petit larceny, *id.* ¶ 22. Following his release from custody for attempted robbery in the

third degree, Defendant absconded from supervision twice, resulting in revocation of his parole. *Id.* ¶ 21.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's substantial criminal history as well as his need for treatment for his persistent substance abuse.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), for which he faces a maximum term of imprisonment of 10 years. 18 U.S.C. § 924(a)(2). He also faces: up to 3 years of supervised release, 18 U.S.C. § 3583(b)(2); not less than 1 and no more than 5 years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $250,000, 18 U.S.C. § 3571(b); and a mandatory special assessment of $100, 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Sentencing Guidelines § 2K2.1 applies to violations of 18 U.S.C. § 922(g)(1) and, because Defendant committed the instant offense subsequent to sustaining at least two "felony convictions of either a crime of violence or a controlled substance offense," the Guidelines set a base offense level of 24.[1] *See* United States Sentencing Commission, *Guidelines Manual*, § 2K2.1 & cmt. n.1; § 4B1.2 (Nov. 2016) ("USSG").

The parties disagree about whether Defendant's prior convictions should result in enhancements in Defendant's offense level. Of Defendant's prior felony convictions, the Government and Probation identify three which they contend are "felony convictions of either a crime of violence or a controlled substance offense" under Sentencing Guideline § 2K2.1, leading to a base offense level of 24 pursuant to USSG. § 2K2.1(a)(2): 1) Attempted robbery in the third degree, in violation of New York Penal Law § 160.05 ("Attempted Robbery Conviction"); 2) Criminal possession of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.06 ("2006 CPCS Conviction"); and 3) Criminal sale of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.31 ("2009 CSCS Conviction"). The defense argues that Defendant's base offense level should be 14 because the New York statutes under which Defendant was convicted in the 2006 CPCS Conviction and 2009 CSCS Conviction are broader than "controlled substance offense" under the Guidelines and

---

[1] For the purposes of this analysis, only previous convictions that receive criminal history points are considered. USSG § 2K2.1 cmt. n.10.

that New York robbery in the third degree is broader than the generic meaning of "robbery" as defined by the Guidelines.

### a. Defendant's Prior "Controlled Substance" Convictions

Under the 2016 Sentencing Guidelines, a "controlled substance offense" is defined by USSG § 4B1.2 as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense.

USSG § 4B1.2(b) & cmt. n.1. The relevant question is whether the defendant's prior convictions qualify as "controlled substance offenses" under the Guidelines.

On November 14, 2006, Defendant, having been convicted of criminal possession of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.06(1), was sentenced to one year of imprisonment. *See* ECF No. 16, Ex. A (Indictment and Certificate of Disposition for 2006 CPCS Conviction). The New York statute of conviction provides: "a person is guilty of criminal possession of a controlled substance in the fifth degree when he knowingly and unlawfully possesses," *inter alia*, "a controlled substance with intent to sell it[.]" N.Y. Penal Law § 220.06(1). On January 23, 2009, Defendant, having been convicted of criminal sale of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.31, was sentenced to thirty months' imprisonment. *See* ECF No. 16, Ex. B (Indictment and Certificate of Disposition for 2009 CSCS Conviction). The New York statute of conviction provides: "a person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance." N.Y. Penal Law. § 220.31.

"Controlled substance," in turn, is defined by reference to multiple schedules that list numerous substances. *See* N.Y. Penal Law § 220.00(5); N.Y. Penal Law § 3306 (listing

/

substances). Therefore, §§ 220.06(1) and 220.31 should be construed as incorporating those schedules.

The Government and Probation argue that both the 2006 CPCS Conviction and 2009 CSCS Conviction qualify as controlled substance offenses under USSG §§ 2K2.1 and 4B1.2. The defense argues that the enhancement for a prior "controlled substance offense" is invalid because, at the time of Mr. Santos' convictions, New York's schedule of controlled substances was categorically broader than the federal schedule provided.

To determine whether a state conviction meets the Guidelines definition, courts employ the categorical and modified categorical approaches. *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008). A court must first decide whether the statute under which the Defendant was previously convicted is divisible or indivisible in order to determine which approach to employ. *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017). If a statute is indivisible, courts apply the categorical approach to determine if the state statute matches with the generic federal definition of a corresponding felony. *Id.* Under the categorical approach, "[s]entencing courts may 'look only to the statutory definitions'—i.e., the elements—of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). If the statute defining a defendant's prior offense

> has the same elements as the "generic" . . . crime, then the prior conviction can serve as [a] . . . predicate; so too if the statute defines the crime more narrowly . . . . But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as [a] . . . predicate, even if the defendant actually committed the offense in its generic form.

*Descamps*, 133 S. Ct. at 2283. Under the categorical approach, a defendant's "actual conduct is irrelevant to the inquiry." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015).

For divisible statutes, courts instead apply the modified categorical approach. *Harbin*, 860 F.3d at 64. That approach permits consideration of certain materials that reveal which of a statute's separate offenses served as the basis for the defendant's conviction. *Id.* (citing *Descamps*, 133 S. Ct. at 2283). A divisible statute is one that lists elements in the alternative, and, in doing so, creates a separate crime associated with each alternative element. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

On the other hand, an indivisible statute creates only a single crime, but it may "spell[ ] out various factual ways," or "means," "of committing some component of the offense." *Id.* The jury need not agree on the particular means by which the defendant committed the crime to convict a defendant under such a statute. *Id.* In sum, a statute creating alternative elements, and thus separate crimes, is divisible, but a statute providing alternative means of committing a single crime is indivisible. *Harbin*, 860 F.3d at 64.

In its June 8, 2017 Letter, the Government argued, "[s]ection 220.06(1) effectively sets out a long list of different violations of the law: knowingly and unlawfully possessing the first substance with intent to sell it; knowingly and unlawfully possessing the second substance with intent to sell it; and so on" because "'controlled substance' . . . is defined by reference to multiple schedules that list numerous substances." ECF No. 16 at 2. Accordingly, the Government reasoned, statutes like 220.06(1) and 220.31 are divisible. *Id.* The defense argues that both 220.06(1) and 220.31 are indivisible. ECF No. 20 at 3. According to the defense, there is only one way to violate 220.06(1) and 220.31—by possessing or selling a "controlled substance," respectively. ECF. No. 20 at 4-5. The defense argues that if both statutes are indivisible, the court cannot look to the underlying facts of the defendant's prior convictions, but

9

rather can only determine whether the text of the New York statutes match with the generic federal definition of a corresponding felony. According to the defense, there is no match.

On June 21, 2017, the Second Circuit held in *Harbin v. Sessions* that the New York offense of criminal sale of a controlled substance in the 5th degree, New York Penal Law § 220.31, is not a controlled substance offense for immigration purposes. 860 F.3d 58 (2d Cir. 2017). *Harbin* held that New York Penal Law § 220.31 is indivisible under *Mathis v. United States*, 136 S. Ct. 2243 (2016). *Harbin*, 860 F.3d at 66. In analyzing whether New York Penal Law § 220.31 is indivisible, the Second Circuit first examined the text of the statute:

> NYPL § 220.31's text suggests that it creates only a single crime, but provides a number of different factual means by which that crime may be committed. The statute criminalizes sale of a "controlled substance." Although it incorporates state schedules to clarify which substances are "controlled," it provides no indication that the sale of each substance is a distinct offense. Moreover, the text does not suggest that a jury must agree on the particular substance sold.

*Id.* at 65. Furthermore, the Second Circuit observed that "[t]he fact that NYPL § 220.31 carries the same penalties for each violation is therefore in line with our reading of § 220.31: that each controlled substance is a mere 'means' of violating the statute, not a separate alternative element." *Id.*

The Second Circuit also considered rulings from the New York Appellate Division regarding New York Penal Law § 220.16(1) as comparable to New York Penal Law § 220.31, except that New York Penal Law § 220.16(1) deals with possession instead of sale, particularly of narcotics. New York Penal Law § 220.16(1) reads, in relevant part:

> A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it . . .

The Second Circuit observed that

> [s]everal opinions state that different narcotic drugs do not create separate crimes

under this statute, and that jurors need not agree as to the particular narcotic drug in question. . . . A conclusion that NYPL § 220.16(1) "treats all drugs classified as narcotics interchangeably" suggests that NYPL § 220.31 would take the same approach to the term "controlled substances," given the similarity of the statutes' language and structure.

*Id.* at 67.

In the wake of *Harbin*'s holding that § 220.31 is indivisible, the parties agree that § 220.31 is an indivisible statute. The defense argues that the same logic the Second Circuit applied to § 220.31 in *Harbin* should also apply to § 220.06(1). However, the Government maintains that § 220.06(1) is a divisible statute pending clarification from the U.S. Court of Appeals for the Second Circuit.

Assuming that both sections are indivisible, the defense argues that neither conviction can serve as a predicate offense because the New York drug schedules are broader than the federal schedules. A "controlled substance" under New York Penal Law § 220.00 is "any substance listed in schedule I, II, III, IV, or V of section thirty-three hundred six of the public health law." N.Y. Penal Law § 220.00(5). In 2005 and 2008, New York's schedule included at least one substance (human chorionic gonadotropin, or HCG) not scheduled federally. *Compare* N.Y. Pub. Health Law § 3306, Schedule III(g) (2005) (listing "Chorionic gonadotrophin") *with* 21 U.S.C. §§ 802(6) and 812 (2005) (federal schedule, not listing that substance).

In support of their argument, the defense cites a recent EDNY case in which Judge Weinstein held that convictions under New York Penal Law § 220.31 are not predicate crimes for the purpose of USSG § 2K2.1 enhancements. *United States v. Barrow*, 230 F. Supp. 3d 116, 125 (E.D.N.Y. 2017). Similar facts were present in *Barrow* as here. There, Probation, relying on "two felony convictions of either a crime of violence or a controlled substance" believed the base level offense was 24. *Id.* at 120. The relevant convictions were: 1) a conviction for

violating a New York Class D felony, fifth-degree criminal sale of a controlled substance following a 1994 arrest, and 2) a conviction for the same crime following a 2002 arrest. *Id.* The first conviction was too old, so Judge Weinstein confined his analysis to the second conviction. *Id.*

The defense in *Barrow* made a similar argument as the defense here is making—that the second conviction was not a "controlled substance offense" under the Guidelines definition. In analyzing this question, Judge Weinstein found:

> The elements of the generic "controlled substance offense," as defined by the guidelines, are not clear. Unlike the generic offense of "burglary" under the ACCA, the Supreme Court has never defined the exact elements of a predicate "controlled substance offense." . . . On a case-by-case basis, courts have determined that certain state criminal statutes sweep more broadly than the generic "controlled substance offense." Convictions under such statutes cannot be used to enhance sentences. . . . A state law may sweep broader than the federal generic predicate if the state bans substances that federal law does not. Several courts of appeals have held that state laws which ban substances that are not listed in the schedules of the federal Controlled Substances Act ("CSA") are categorically broader than the generic Guidelines "drug trafficking offense." . . . The elements of a predicate "drug trafficking offense" under the Guidelines are largely the same as the elements of a predicate "controlled substance offense" under the Guidelines—the definitions of the two offenses are identical in all pertinent ways.

*Id.* at 122-23 (internal citations omitted).

Judge Weinstein concluded:

> The second way the state statute may be broader than the generic crime—that New York law bans a broader list of substances than the CSA—applies to Mr. Barrow's conviction. "Chorionic gonadotrophin," also known as chorionic gonadotropin and human chorionic gonadotropin ("HCG"), has been listed continuously on the New York scheduled of controlled substances since, at the latest, January 31, 2001. *See* N.Y. Pub. Health Law § 3306, Sch. II(j) (McKinney) (2001) (listing "chorionic gonadotrophin"); 2003 N.Y. Sess. Laws Ch. 591 (A.8146–A) (McKinney) (rescheduling "chorionic gonadotrophin" under Schedule III). This substance is not criminalized by any CSA schedule. . . . *Because HCG is criminalized by New York but not by the federal government, a conviction under New York Penal Law § 220.31 is categorically broader than a conviction for a generic "controlled substance offense."*

*Id.* at 123–24 (emphasis added).

However, the approach taken in *Barrow* is at odds with a recent SDNY decision by Judge Nathan, which the Government cites. *See* ECF No. 26 at 2. In *United States v. Laboy*, as in *Barrow*, the court considered whether a violation of § 220.31 qualified as a "controlled substance offense" for the purposes of the Guidelines calculation. 16-CR-669, 2017 WL 6547903 (S.D.N.Y. Dec. 20, 2017). As in *Barrow*, the court noted that "[a]t the time of Defendant's conviction, there was one drug on New York's schedule of controlled substances that was not listed on the federal Controlled Substances Act (CSA)–namely, human chorionic gonadotropin (HCG)." *Id.* at *2. However, the court found:

> § 4B1.2(b)'s definition of "controlled substance offense" begins with the phrase "an offense under federal *or* state law." § 4B1.2(b) (emphasis added). The plain reading of this disjunctive "or" indicates that the Commission intended to incorporate state offenses as qualifying predicates. . . . [I]n the context of a definition that captures offenses under federal *or* state law, a plain textual reading demonstrates that qualifying predicate state offenses would carry with them a reference to their own state drug schedules, as the state which proscribes the conduct is also the controlling entity. Based on the text alone, it is not reasonable to interpret the definition's reference to "controlled substances" as only referring to those substances controlled by federal law, and not by state law.

*Id.* at *3. The court ultimately concluded that "the Guidelines definition for 'controlled substance offense' clearly intends to incorporate state drug schedules," and thus found that defendant's prior violation of New York Penal Law § 220.31 qualified as a "controlled substance offense" for the purposes of the Guidelines calculation. *Id.* at *5. In addressing the approach by *Barrow* and other cases applying the analysis advocated for by the defendant, the court stated, "[p]ut simply, this Court disagrees." *Id.* at *6-7.

And, put simply, this Court also disagrees. Under Judge Nathan's reasoning in *Laboy*, which this Court finds persuasive, Defendant's prior convictions under both § 220.06 and § 220.31 qualify as "controlled substance offenses" under the Guidelines.

13

### b. Defendant's Prior Conviction for a "Crime of Violence"

On January 23, 2009, Defendant was convicted and sentenced for attempted robbery in the third degree. ECF No. 16, Ex. C. In New York, "[a] person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal Law § 160.05.

Under USSG § 4B1.2(a):

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Generic robbery is specifically enumerated as a "crime of violence" under the 2016 version of Guidelines § 4B1.2(a)(2). *See* USSG § 4B1.2(a)(2); *see also* USSG § 4B1.2, cmt. n.1. However, Defendant argues that New York third degree robbery is not a "crime of violence" because it does not require the use, attempted use, or threatened use of physical force against another, under USSG § 4B1.2(a)(1).

Where a specific offense is listed as a qualifying felony, "then the trial court need find only that the state statute corresponds in substance to the generic meaning" of that enumerated felony. *Taylor*, 495 U.S. at 599. Applying this principle here, if New York's robbery offense "corresponds substantially to the generic meaning of robbery, then the offense qualifies categorically as a crime of violence for Guidelines enhancement purposes." *United States v. Walker*, 595 F.3d 441, 445–46 (2d Cir. 2010) (internal quotation marks omitted). In *United States v. Jones*, the Second Circuit recently held that, under the categorical approach, "New York's definition of robbery necessarily falls within the scope of generic robbery as set forth in the commentary to U.S.S.G. § 4B1.2(a)." 878 F.3d 10, 19 (2d Cir. Sept. 11, 2017, revised Oct.

5, 2017).[2] While the at-issue offense in *Jones* was robbery in the first degree, the Second Circuit noted that "pursuant to the commentary to the former residual clause, robbery of *any degree* in New York qualifies as a crime of violence." *Id.* at 18 (emphasis in original).[3]

Defendant argues that applying the 2016 version of the Guidelines presents an *ex post facto* problem because generic robbery is specifically enumerated as a crime of violence in the 2016 version but not in the 2015 version. *Compare* USSG § 4B1.2(a)(2) (Nov. 2016) (listing robbery as crime of violence), *with* USSG § 4B1.2(a)(2) (Nov. 2015) (not listing robbery, but including residual clause). While ordinarily sentencing courts apply the Guidelines in force as of the date of sentence, Defendant contends that doing so in this case would work as an *ex post facto*, because Defendant's Attempted Robbery Conviction would not be a crime of violence under the 2015 Sentencing Guidelines and that the 2015 residual clause cannot apply to the conviction. *See* ECF No. 20 at 14.

In arguing that the former residual clause would not apply, the defense must grapple with the Supreme Court's recent decision in *Beckles v. United States*. In *Beckles*, the Supreme Court considered the residual clause of the Sentencing Guidelines defining a "crime of violence" as an offense that "involves conduct that presents a serious potential risk of physical injury to another." *Beckles v. United States*, 137 S. Ct. 886, 890 (2017) (citing United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov. 2006)). The Supreme Court had held in *Johnson v. United States,* 135 S. Ct. 2551 (2015), that the identically worded residual clause in the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)(2)(B), was

---

[2] While *Jones* considered the 2014 version of the Guidelines, the text of the residual clause and the corresponding commentary on "crime of violence" is identical in the 2014 and 2015 versions.
[3] Prior to 2016, the Sentencing Guidelines included a residual clause defining a "crime of violence" as an offense that "involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2).

15

unconstitutionally vague. The petitioner in *Beckles* contended that the Guidelines' residual clause is also void for vagueness. The Court found that because they "merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge" and that they "do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Beckles*, 137 S. Ct. at 894. The Court held that "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." *Id.* at 890.

The defense's response to *Beckles* is to say that what the case "does not hold is that the Guideline's residual clause is clear." ECF No. 20 at 14. The defense argues that the Court disputed nothing it said in *Johnson* regarding the residual clause of the ACCA, which the Court described as suffering from "hopeless indeterminacy." *Johnson*, 135 S. Ct. at 2558. As there is "no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause," *id.* at 2562, it cannot be used given the requirement of "correctly calculating the applicable Guidelines range." ECF No. 20 at 17 (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

However, the residual clause of the 2015 Guidelines still stands, and generic robbery was also specifically enumerated as a crime of violence in the commentary to the 2015 version of the Guidelines § 4B1.2. *See* USSG § 4B1.2 cmt. n.1 (2015) (the definition of a "crime of violence" includes robbery). "Commentary provisions must be given 'controlling weight' unless they: (1) conflict with a federal statute, (2) violate the Constitution, or (3) are plainly erroneous or inconsistent with the Guidelines provisions they purport to interpret." *Jones*, 878 F.3d at 18 (citing *Stinson v. United States*, 508 U.S. 36, 45 (1993)). Defendant has not identified any such flaws, nor do we discern any.

Applying either the 2015 or the 2016 version of the Guidelines would thus yield the same result, as the law in this Circuit strongly indicates that New York's definition of robbery (even in the third degree) falls within the scope of generic robbery as enumerated in the Guidelines and as captured by the residual clause in the 2015 version of the Guidelines. Accordingly, there is no *ex post facto* issue. Therefore, Defendant's prior New York state conviction for attempted robbery in the third degree constitutes a "crime of violence" as defined in USSG § 4B1.2(a).

Therefore, Defendant's base offense level is 24, which, accounting for a 3 level decrease for acceptance of responsibility, brings Defendant's total offense level to 21. Given a total offense level of 21 and a criminal history category of five, the Guidelines suggest a term of imprisonment of between 70 and 87 months. USSG ch. 5, pt. A. The Guidelines further recommend a term of supervised release of between 1 and 3 years, *id.* § 5D1.2(a)(2); a fine of between $15,000 and $150,000, *id.* § 5E1.2(c); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation under the Guidelines. *See id.* § 5B1.1 cmt. n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

### CONCLUSION

A sentence of 70 months of incarceration, 3 years of supervised release, and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum to the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/ William F. Kuntz, II

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2018
Brooklyn, New York